Charles CAIN, Executor of the Estate of Diane Cain and Charles Cain in his own right

v.

**DARBY BOROUGH, et al.**

Civ. A. No. 91–1583.

United States District Court, E.D. Pennsylvania.

Jan. 17, 1992.

Robert J. Casey, Jr., Mylotte, David & Fitzpatrick, Philadelphia, PA, for plaintiff.

Thomas K. Ellixson, Robert G. Hanna, Jr., Marshall, Dennehy, Warner Coleman & Goggin, Jeffrey P. Hoyle, William F. Holsten, II, Holsten & White, Media, PA, for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Darby Borough, Darby Borough Police Department, Officer Robert Boyden, Officer John Chappelle, Officer Cory Kramer; and Yeadon Borough, Yeadon Borough Police Department and Sergeant Robert Frazier moved for summary judgment. Fed.R.Civ.P. 56.[1] Defendants Colwyn Borough, Colwyn Borough Police Department

and Officer Salvatore Nucifora joined with them.[2]

On March 12, 1991, plaintiffs Diane Cain, now deceased, and her husband, Charles Cain, filed this action under 42 U.S.C. § 1983, asserting a violation of Diane Cain's civil rights when she was arrested on July 4, 1989.[3] The amended complaint also alleges supplemental state tort claims and a derivative claim on behalf of Charles Cain.[4]

Defendants' summary judgment motions contend that on October 18, 1989 Diane Cain released any civil claim she had resulting from her arrest by the police on July 4, 1989 and the ensuing criminal charges.[5] On September 27, 1991, upon evidentiary hearing, defendants' motions were granted.

### I.

The following fact findings are made:

1. On July 4, 1989 a friend of Diane Cain's daughter, Joe Wettlaufer, allegedly stole money belonging to Diane Cain. Diane Cain called her husband, from whom she was separated, and he arrived at her home shortly thereafter. He told her he had a gun. Charles Cain and Joe Wettlaufer left the house. Diane Cain deposition Mar. 13, 1991 at 24–28.

2. Diane Cain telephoned the police and reported that her husband, Charles Cain, was armed with a gun and was chasing Joe Wettlaufer. Diane Cain deposition Mar. 8, 1991 at 24.

3. In response, officers from the Darby, Yeadon and Colwyn Borough Police Departments came and arrested Charles Cain. Diane Cain deposition Mar. 13, 1991 at 98.

---

1. Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant has the burden of showing that there is no triable issue. The opposing party must *point to specific, affirmative evidence in the record*—and not simply rely on allegations or denials in the pleadings—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Borough of West Chester,* 891 F.2d 458, 464 (3d Cir.1989).

2. Counsel for plaintiff agreed to allow Colwyn defendants to join in Darby's and Yeadon's motions for summary judgment so as to be before

the court at one time. Trial transcript Sept. 24, 1991 at 109–11.

3. Jurisdiction is federal question. 28 U.S.C. § 1331.

4. Upon Diane Cain's death in April 1991, which was unrelated to the facts of this case, Charles Cain was substituted as executor of her estate.

5. The release was left in the prosecutor's file, and counsel in this action were unaware of its existence until July, 1991. Trial transcript Sept. 18, 1991 at 131–32.

4. Driving her car Diane Cain saw her husband's car in a nearby parking lot, and a number of police were there. *Id.* at 29–30. When she asked where her husband was and the officers did not respond, she cursed at them. *Id.* at 31. She was told if she did not leave, she would be arrested. Subsequently, she was arrested and bit an officer's hand as he reached inside her car to shut off the ignition. *Id.* at 99–101. As a result, Diane Cain was charged with three counts of aggravated assault as well as simple assault, resisting arrest and disorderly conduct.

5. Thereafter, she told her brother, Nicholas DiGregorio, who was president of Darby Borough Council and deputy warden at Delaware County Prison, that she caused the incident, bit the officer, and resisted arrest. Trial transcript Sept. 16, 1991 at 22–23. She told him she wanted to resolve the criminal charges against her and did not want to lose her good relationships with the officers. *Id.* at 25, 28. She also told her brother she did not want to sue anyone as a result of the incident. *Id.* at 36.

6. The police chief of Darby Borough knew Diane Cain for 25 or 30 years and they were friends. Trial transcript Sept. 23, 1991 at 3–4. She spoke with him that summer and asked for his advice. *Id.* at 6, 17. She said she wanted the criminal charges to be dropped, *id.* at 17, and that she would not sue the police department. *Id.* at 65. Chief Smythe told her that if she went on ARD, she would not be able to sue the police. *Id.* at 24.

7. The Accelerated Rehabilitative Disposition or ARD program is an alternative way to resolve criminal charges in a specified range of cases. It effectuates pretrial diversion. A person is placed on ARD by a judge on motion or consent of the prosecutor. Upon satisfactory completion of the program, the charges against the individual are dismissed. *See Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985).

8. G. Guy Smith, Esq., represented Diane Cain in the criminal charges. An experienced criminal attorney, he was admitted to the bar in 1968. Trial transcript Sept. 18, 1991 at 53–54. On July 5, 1989, Smith met with Diane Cain and her husband. *Id.* at 54.

9. Smith met again with Diane Cain at her preliminary hearing. She made clear to Smith she wanted to be placed on ARD. He advised her the police would want a release from her because "they're not going to let you get ARD and then let you sue them." *Id.* at 58. Diane Cain responded that she wanted ARD and did not want a trial. *Id.* at 58–59.

10. An affidavit signed by Smith on September 5, 1991 states he never advised Diane Cain to release any rights or claims regarding civil rights violations in exchange for acceptance into the ARD program nor did he authorize any attorney from his office to advise Diane Cain to execute a release of these claims. The affidavit was prepared by plaintiff's present counsel. It also states Smith understood that Diane Cain intended to pursue her claim against various police departments and police officers. Plaintiff's exhibit 7.

11. In signing this affidavit, Smith intended to say he was not personally aware of any civil release signed by Diane Cain and whether she was going to sue anyone "was up to her at that point." Trial transcript Sept. 18, 1991 at 100–101. Smith's associate and not Smith represented Diane Cain at the hearing at which she was placed on ARD. *See* finding 18–23 *infra.*

12. During August 1989, Smith spoke to the Darby Borough police chief about having the aggravated assault charges withdrawn. In Smith's opinion, Diane Cain would not be recommended for ARD if the aggravated assault charges persisted. Trial transcript Sept. 18, 1991 at 55.

13. At her preliminary hearing, the aggravated assault charges were withdrawn at the request of the Darby Borough police, and Diane Cain waived the hearing as to the other charges. Trial transcript Sept. 24, 1991 at 16–17. On September 19, 1989, Diane Cain agreed to waive her speedy trial rights under Pa.R.Crim.P. 1100 in order to be considered for ARD. Defendants' exhibit D.

14. W. Wayne Punshon, Esq., is an assistant district attorney and chief of the ARD

Division in Delaware County. Trial transcript Sept. 16, 1991 at 59–60. Punshon recommended ARD in Diane Cain's case conditioned on her giving a release of liability for police conduct on July 4, 1989. Trial transcript Sept. 18, 1991 at 9–10. The unwritten policy of the Delaware County District Attorney's office was not to recommend ARD if the defendant would not sign a civil release. Trial transcript Sept. 16, 1991 at 97–98.

15. In her application for ARD, Diane Cain represented that she had "never been arrested or charged with any criminal or vehicular offense" except for the July 4, 1989 charges. Defendants' exhibit E. Diane Cain was arrested for retail theft on December 7, 1982; April 4, 1983; and November 30, 1987. Defendants' exhibit B.

16. Diane Cain received ARD for the retail theft offense of November 30, 1987. Defendants' exhibit K. Punshon would not have recommended ARD for Diane Cain on the July 4, 1989 charges had he known she received the previous ARD. Trial transcript Sept. 16, 1991 at 75.

17. Donna Zaccaria, Esq. is an attorney employed by Smith and was admitted to the bar in 1988. Trial transcript Sept. 18, 1991 at 133–34.

18. On October 18, 1989, Diane Cain appeared for an ARD hearing before Judge Prescott in the Delaware County Court of Common Pleas. Smith authorized Zaccaria to attend the hearing for him. *Id.* at 134, 139.

19. Prior to the hearing, Diane Cain met with Donna Zaccaria and signed a one-page document entitled "General Release." The top contained the caption of the case and listed the charges as "Simple Assault, Resisting Arrest and DC Harm." The body of the release is in type—with the underlined portion in handwriting:

I, the undersigned Defendant, for the sole consideration of One Dollar ($1.00), receipt of which is acknowledged, and for being accepted into the A.R.D. Program in the above-captioned matter, do hereby remise, release, and forever discharge *Officer Cory Kramer, Officer Robert Boyden and Officer John Chapelle (sic) as well as the Darby Boro Police Dept.* their heirs, executors and administrators (or its successors and assigns), of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claim and demands whatsoever in law or equity, which have resulted or which may develop in the future in connection with he (sic) incident which occurred and led to the filing of charges in the above-captioned matter.

IN WITNESS WHEREOF, I have here unto set my hand and seal this *18* day of *October 1989.*

Diane Cain's purported signature appears below. Defendants' exhibit H. Underneath her signature, it states:

I, the undersigned Attorney, hereby aver that I represent the above Defendant. I further aver that I have reviewed this Release with my client, that he (sic) has signed it in my presence, and that I believe he (sic) fully understands its contents.

Under this paragraph, on the line for attorney for the defendant, Zaccaria signed the document "Donna Zaccaria for G. Guy Smith." Defendants' exhibit H.

20. The general release was a form provided by the district attorney's office on which the officers' names and police department and the date were handwritten. Trial transcript Sept. 18, 1991 at 6; defendants' exhibit H. As verified by Nicholas DiGregorio, the signature on the release was that of his sister, Diane Cain. Trial transcript Sept. 24, 1991 at 38–39.

21. Zaccaria does not specifically recall the events of that day. However, it was always her practice to explain to clients the meaning of the general release before having them sign it. She would not sign the general release herself unless the client had signed it in her presence. Trial transcript Sept. 18, 1991 at 136–138.

22. On October 18, 1989, Diane Cain was present when Punshon gave a 10–minute explanation of the ARD program. The presentation is made to the applicants collectively immediately before they are individually processed. *Id.* at 4–5, 11.

23. At the October 18, 1989 hearing, a colloquy as to Diane Cain's plea agreement was conducted before Judge Prescott. Zaccaria asked Diane Cain if she understood the ARD program and whether, if she violated her probation, she could be brought to trial and recharged. She was also asked if she wished to be placed in the ARD program. She responded affirmatively to these questions. Punshon summarized the criminal charges, noted the police did not object and that Diane Cain had released them from all civil liability, and moved her admission. The judge approved the application and placed her on three months' probation. Defendants' exhibit G.

24. The October 18, 1989 hearing was tape recorded. On the tape, Punshon is heard to say to Judge Prescott: "She has released them [referring to the police] from all civil liability." He is not heard to say "she is released, then, from all civil liability."[6] Both Punshon and Zaccaria understood Punshon to mean that Diane Cain had released the police from civil liability. Defendants' exhibits I & J.

## II. The Validity of the Release

The controlling issue concerns the release's enforceability. Authoritative guidance comes from *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), which held that a release of a civil rights claim given in exchange for dismissal of criminal charges is not per se invalid.

In *Rumery*, the complainant in a criminal case was the alleged victim of a sexual assault. Bernard Rumery, who was a friend of the criminal defendant, allegedly telephoned the victim to dissuade her from testifying. Rumery was arrested and charged with witness tampering. An agreement was reached to dismiss the charges against him in return for a release of any claims he might have against the town, its officials, or the victim in connection with his arrest. Ten months later, he filed a § 1983 suit against the town and its officers for his arrest, defamation and imprisonment. The district court's order dismissing the suit on the basis of the release-dismissal agreement was upheld because (1) the agreement was voluntary; (2) there was no evidence of prosecutorial overreaching; and (3) the relevant public interests would not be adversely affected. *Id.* at 397–98, 107 S.Ct. at 1194–95.

 In Diane Cain's criminal case, unless she violated her ARD probation, the eventual result was dismissal of the charges. Pa. R.Crim.P. 185. The validity, therefore, of the release given by her depends on whether the three *Rumery* requirements are fulfilled. The burden of proof appears to be on the releasee. 480 U.S. at 401, 107 S.Ct. at 1196 (O'Connor, J., concurring).

### 1. Voluntariness

 *Rumery:* "Many factors may bear on whether a release was voluntary." *Id.* at 401, 107 S.Ct. at 1196 (O'Connor, J., concurring). As the four-justice plurality noted, Rumery was represented by an experienced criminal lawyer; he was not in jail when he signed the agreement; he had time to consider it before signing; his lawyer drafted the agreement; he was a sophisticated businessman. *Id.* at 394, 107 S.Ct. at 1192–93. Justice O'Connor's concurrence also stressed the knowledge and experience of the criminal defendant; the circumstances of the execution of the release, including whether defendant was represented by counsel; whether the release was executed under judicial supervision; and the severity of the criminal charge as a gauge of its coercive effect. *Id.* at 401–402, 107 S.Ct. at 1196–97.

These factors favor enforcement of Diane Cain's release. Diane Cain was represented by counsel throughout the entire criminal process. When her attorney spoke to her on the morning of the preliminary hearing, he told her "they're not gonna let you go on ARD and then turn around and sue them." Trial transcript Sept. 24, 1991 at 17.[7] When

---

6. Both Punshon and Zaccaria submitted affidavits that Punshon had said "she has released them"—meaning the police. This is also what I heard on the tape. Plaintiff's trial counsel contends that the tape recording has Punshon saying

"she is released then." Trial transcript Sept. 18, 1991 at 33.

7. In Pennsylvania, the prosecutor's motion is a prerequisite for ARD. *See Commonwealth v.*

he asked if she still wanted him to go forward, "[t]he words that she said to me told me she wanted me to go do what I was telling her I was gonna go do." *Id.* at 16. That discussion occurred in August of 1989, well before the hearing on October 18, 1989, giving Diane Cain sufficient time to consider whether she wanted to pursue ARD and, in doing so, give up any claim against the police.

Other factors comport with *Rumery*. Diane Cain was not in custody when she executed the release. While she may not have been a sophisticated business person, her brother's description of her suggested she was street-wise and active in the community. Also, she was familiar with ARD having been in the program in 1988.

A Fifth Circuit decision applying *Rumery* is instructive on voluntariness. There, an inmate's agreement not to sue for injuries sustained in a county jail fire was upheld. In exchange, the county had agreed to a sentencing recommendation of parole for four felonies and the reduction of an arson charge to destruction of public property. *Berry v. Peterson* 887 F.2d 635 (5th Cir.1989). Given *Rumery*, the court found no evidence of coercion. The criminal charges were made before the § 1983 action was filed or threatened. The inmate expressed no unwillingness at the time the release was given. These factors exist here as well.

On the other hand, there was no persuasive evidence that Diane Cain did not act voluntarily in executing the release. The affidavit signed by her attorney Smith to the effect that she may have intended to sue was explained and reconciled in Smith's and his associate's testimony.[8]

### 2. Public Policy

The public policy for ARD is set forth in the Pennsylvania Rules of Criminal Procedure:

*Stranges*, 397 Pa.Super. 59, 579 A.2d 930 (1990); see discussion *infra* at pp. 1202–1203.

8. Plaintiff's counsel did not concede that Diane Cain had signed the release. Trial transcript

The primary purpose of this program is the rehabilitation of the offender; secondarily, the purpose is the prompt disposition of charges, eliminating the need for costly and time-consuming trials and other court proceedings. These rules contemplate that ordinarily the defendants eligible for the ARD program are first offenders who lend themselves to treatment and rehabilitation rather than punishment and that the crime charges is relatively minor and does not involve a serious breach of the public trust. The program is intended to encourage offenders to make a fresh start after participation in a rehabilitative program and offers them the possibility of a clean record if they successfully complete the program.... In general, the District Attorney has the responsibility for determining which cases will be recommended into the ARD program.

Pa.R.Crim.P. 159 (Accelerated Rehabilitative Disposition–Summary Cases, Committee Introduction) (1991).

The chief of the Delaware County ARD Division testified as to the purpose of the civil release in ARD cases. It "is to bypass the litigation that is involved in a criminal prosecution ... and to proceed directly to what would likely be the outcome of the case in order to ease the burden of case loads on the [c]ourts." Trial transcript Sept. 16, 1991 at 71. He continued:

[I]t's in the interests of the prosecutor's office and the police to avoid the needless litigation and ofttimes (sic) frivolous actions that are brought and to resolve the entire matter at the time of the ARD hearing.... That is why a release is required from situations where it may be reasonably anticipated that litigation will subsequently arise after the individual is ... given ARD. It would, indeed, be somewhat of a disservice to the law enforcement community to offer this individual a program by which she avoids prosecution and she avoids conviction only to

Sept. 16, 1991 at 6–7. However, plaintiff, who must have been familiar with his wife's signature as well as other important facts regarding the release, did not testify. Trial transcript Sept. 24, 1991 at 148.

have her turn around, not as contrite as she appeared to be at the time she went into the ARD Program, and to bring lawsuits against the police departments that were involved.

*Id.* at 71–72.

The concerns elucidated in this testimony are within the permissible public interest considerations articulated in *Rumery.* As Justice Powell's plurality opinion observed "[t]o the extent release-dismissal agreements protect public officials from the burdens of defending" unjust, marginal or frivolous § 1983 claims, they further an important public interest. 480 U.S. at 395–96, 107 S.Ct. at 1193. The preparation for such suits and the trial itself "will require the time and attention of the defendant officials, to the detriment of their public duties.... This diversion of officials from their normal duties and the inevitable expense of defending even unjust claims is distinctly not in the public interest." *Id.*

### 3. Prosecutorial Misconduct

The prosecutor has discretion in recommending ARD:

[T]he decision to submit the case for ARD rests in the sound discretion of the district attorney, and absent an abuse of that discretion involving some criteria for admission to ARD wholly, patently and without a doubt unrelated to the protection of society and/or the likelihood of a person's success in rehabilitation, such as race, religion or other such obviously prohibited considerations, the [district] attorney ... must be free to submit ... it for ARD consideration based on his view of what is most beneficial for society and the offender.

*Commonwealth v. Lutz,* 508 Pa. 297, 310, 495 A.2d 928, 935 (1985).

*Rumery* emphasizes the need for prosecutorial discretion in determining the best use of government resources. 480 U.S. at 396–97, 107 S.Ct. at 1193–94. Yet it also raises concern that prosecutors can bring frivolous charges or dismiss meritorious charges to protect the interests of other officials. *Id.* at 395, 107 S.Ct. at 1193. Balancing these factors, a prosecutor has discretion to enter into release-dismissal agreements so long as there is no overreaching or misconduct. In *Rumery,* the prosecutor's "independent, legitimate reason to make this agreement directly related to his prosecutorial responsibilities" was to spare the alleged rape victim from having to testify. *Id.* at 398, 107 S.Ct. at 1194–95.

■ Where there is an abuse of prosecutorial discretion, a release is not to be enforced. In *Haynesworth v. Miller,* 820 F.2d 1245 (D.C.Cir.1987), a release was ruled invalid in light of *Rumery.* According to the complaint, plaintiff had been charged with disorderly conduct solely because he refused to release his civil claims against the arresting officers. *Id.* at 1257. Thereafter, the prosecutor offered to dismiss the charge if a threatened civil action against the police was released. *Id.* at 1251. The grant of defendant's 12(b)(6) motion to dismiss was reversed because the pleadings were sufficient to make out an issue of prosecutorial misconduct thereby casting doubt on the enforceability of the release. *Id.* at 1256.

As to Diane Cain, there is no evidence the prosecutor or the police proceeded in a manner designed to persuade her not to file a civil action. Instead, the police chief's recommendation to withdraw the aggravated assault charges was made at her attorney's request. Her attorney took the first step to obtain ARD only after informing her that a release would probably be required and satisfying himself that she wanted to go ahead with the program. Diane Cain also told her brother and police chief Smythe that she did not intend to sue the officers and simply wanted the criminal charges to be resolved.

She also admitted to them having been told by the officers to leave the scene and having bitten one of them, and she later apologized for her conduct.

Plaintiff's position that the release is invalid and unenforceable is reminiscent of the per se argument rejected in *Rumery.*[9] Un-

---

**9.** Plaintiff refers to pre-*Rumery* cases in which such releases were held to be invalid as a matter of law.

able to produce evidence of prosecutorial coercion or misconduct, plaintiff instead relies on the possibility that Diane Cain was influenced by the opportunity of a dismissal of her criminal charges. This factor alone, however, without evidence of misconduct or overbearing, does not make the release invalid.

The prosecutor here enunciated why his office requires releases before recommending ARD for this type of case:

> In this particular kind of case, what we are dealing with here is a domestic situation where, undoubtedly, emotions run high. We are dealing with in—I don't know what percent—but, in an extraordinary high percent of cases where the people, the complainants or the defendants are intoxicated. And, they may very well remember things differently—I'm not saying that in this particular case, but I'm talking about this class of cases.

Trial transcript Sept. 16, 1991 at 72. Given this commonly accepted perspective, he exercised discretion to avoid further litigation and the burdening of available resources, a recognized factor in *Rumery.*

### III. The Scope of the Release

Familiarly, "the intention of the parties to a written release is paramount." *Sparler v. Fireman's Ins. Co. of Newark, N.J.,* 360 Pa.Super. 597, 601, 521 A.2d 433, 435, (1987), *appeal denied,* 518 Pa. 613, 540 A.2d 535 (1988) (superseded by statute on other grounds). "It is established law that a release normally encompasses only such matters which may fairly be said to have been within the contemplation of the parties when the release was given." *Hower v. Whitmak Associates,* 371 Pa.Super. 443, 449, 538 A.2d 524, 527 (1988).

■ Here, the release provides for the discharge of liability for certain named officers and the Darby Borough Police department in connection with the July 4, 1989 incident. Diane Cain's counsel Smith understood that the release was a general release: "You were releasing everybody in exchange for getting ARD." Trial transcript Sept. 24, 1991 at 13. There was no limitation. *Id.*

Donna Zaccaria, who explained the release to Diane Cain and was present when both of them signed it, understood the "intent in executing the release was to release all police officers involved in the incident of July 4th of 1989." Trial transcript Sept. 24, 1991 at 21. It also was intended to release "police officers and any municipalities that they worked for." *Id.* at 32. Zaccaria testified that, as a matter of invariable practice, she would have explained to Diane Cain that the release applied to all those police involved in the incident, not only those identified in the release. Trial transcript Sept. 18, 1991 at 146.[10]

The evidence shows that the parties intended the October 18, 1989 release to extend to and cover all of Diane Cain's claims of civil liability arising from police conduct on July 4, 1989. Accordingly, the release, as asserted, is a complete bar to the present action.

---

**10.** Zaccaria testified that the names listed on the release were those provided by the district attorney's office. Trial transcript Sept. 18, 1991 at 138.